**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LA CENA FINE FOODS, LTD., ) | |
| ) | Civil Action No.: 01-cv-5746 (JLL) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **OPINION** |
| JENNIFER FINE FOODS, ) | |
| SUPER-SUPER MARKET of Paterson, ) | |
| New Jersey, SUPER-SUPER MARKET ) | |
| of Union City, New Jersey, ) | |
| SUPER EXTRA and ) | |
| POMODORO FOODS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**LINARES**, District Judge.

Plaintiff  La Cena Fine Foods, Ltd. ("La Cena") commenced this action, alleging federal

and common law trademark infringement, unfair competition and trade dress infringement.  The

name and mark at issue is the "VICTORINA" mark.  Presently, La Cena moves for summary

judgment pursuant to Federal Rule of Civil Procedure 56(c) against the only remaining

Defendant, Jennifer Fine Foods ("Jennifer").  This Court has jurisdiction over this case pursuant

to 28 U.S.C. §§ 1331, 1338(a), (b) & § 1367.  This motion is resolved without oral argument

pursuant to Rule 78 of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

La Cena is a wholesaler of various food products, selling products under its own brand

name as well as under the brands of some of its suppliers, to distributors, wholesalers and

retailers in the United States.  La Cena sells tomato paste under the "VICTORINA" trademark,

registered under United States Trademark Registration No. 1,944,805.  The tomato paste sold by La Cena, including the "VICTORINA" brand, is offered for sale primarily within the Hispanic food markets in the tri-state area of Connecticut, New Jersey and New York.  The mark is also used in connection with other canned foods including pimentos and fish.  Jennifer is a "packer," purchasing bulk foods, like tomato paste, packing it, and selling it for resale.[1]

In 1997, La Cena engaged Delaney Foods, Inc. ("Delaney"), to pack tomato products for La Cena, under La Cena's private "VICTORINA" label and trade dress, for purchase and resell by La Cena to retailers.  Delaney was owned by Arnon Ziv ("Ziv").  At no time was Delaney authorized, licensed or permitted by La Cena to sell, promote or market products under the "VICTORINA" label to anyone but La Cena.  However, in 1999, La Cena allegedly learned that Delaney had been selling "VICTORINA" brand tomato paste directly to retailers and distributors without authorization from La Cena.  Thereafter, Delaney and La Cena entered into an agreement in which Delaney confirmed its commitment to pack tomato products under the "VICTORINA" trademark and dress only for La Cena.  (Puig Decl. Ex. D).  In a letter dated June 1, 1999, Ziv and Delaney agreed that Delaney would "not, in the future ... use 'VICTORINA' as a brand name or as a company name except for [La Cena] and pursuant to [La Cena's] written authorization"  (Id.).  Nine months after the agreement was executed, Ziv formed Jennifer.

---

[1]This matter has been settled as to all other Defendants.  Super-Super Market of Paterson, Super-Super Market of Union City and Super Extra (collectively the "Supermarket Defendants") are supermarkets located in Northern New Jersey that sell food products to the Hispanic market.  Cans of counterfeit "VICTORINA" products were purchased by these supermarkets.  These parties executed a Consent Final Judgment and Permanent Injunction, which was entered by this Court on March 3, 2006.  Likewise, Pomodoro Foods, Inc. ("Pomodoro"), Jennifer's successor-in-interest, executed a Consent Final Judgment and Permanent Injunction, also entered on March 3, 2006.

La Cena alleges, and Jennifer disputes, that after being formed in March of 2000, Jennifer began packing and marketing tomato paste bearing non-authorized, or counterfeit, "VICTORINA" mark and trade dress for sale to retailers in the tri-state area.  Cans of counterfeit "VICTORINA" tomato paste were purchased by La Cena at local supermarkets.  (Gilfillan Decl. Exs. I, P, Q, S, U and V).  These cans were in all material respects identical to La Cena's "VICTORINA" tomato paste as to both the trademark and trade dress.   (Gilfillan Decl. Ex. F). However, the non-authorized cans of tomato paste bear a manufacturer's code of "GE."  La Cena contends that this code was originally the manufacturer's code for a business by the name of Gerdor, which was subsequently taken over by Jennifer.  (Pl.'s Statement of Facts ¶ 40).  Cans packed by Jennifer also bear, as part of the manufacturer's code, a four-digit stamped code, with the first digit representing the year of manufacture and the remaining three numbers representing the day of the year the can was packed.  (Pl.'s Statement of Facts ¶ 41).

By letter dated April 25, 2000, La Cena demanded that Jennifer cease and desist packing, marketing and selling products purporting to be "VICTORINA" products.  (Puig Decl. ¶ 24 and Ex. F).  However, Jennifer allegedly failed, refused, or neglected to do so.  (Id.).  On December 10, 2001, La Cena commenced the instant action, charging federal trademark infringement and unfair competition under the Lanham Act and common law trademark infringement, trade dress infringement and unfair competition.[2]  On May 5, 2002, La Cena made a motion for preliminary injunction, seeking to enjoin the only Defendants at the time, Jennifer and Super-Super Market, from using the "VICTORINA" mark.  On May 30, 2002, the Honorable William H. Walls, U.S.D.J., granted La Cena's motion for preliminary injunctive relief, ordering that the aforesaid Defendants were enjoined from: (1) utilizing La Cena's "VICTORINA" trademark, or any

---

[2]La Cena filed an Amended Complaint on November 24, 2003, adding the remaining Supermarket Defendants and Pomodoro.

derivative thereof, in connection with the sale of any food product, which would give rise to a likelihood of confusion that the source of the food product was La Cena; (2) soliciting business under the "VICTORINA" trademark; (3) passing themselves off as being associated with La Cena; and (4) using labels or trade dress in the sale of any food products sold by Defendants which would associate the products sold by Defendants as those from La Cena. (Order, May 30, 2002). Jennifer was served with Judge Walls' Order on June 5, 2002.

On August 23, 2002, La Cena purchased a can of counterfeit "VICTORINA" tomato paste at C-Town Supermarket in the Bronx, New York which bore the "GE" manufacturing code, followed by the four-digit code "2204." (Pl.'s Statement of Facts ¶ 45). La Cena thereafter moved to hold Jennifer in contempt for violating Judge Walls' May 30 Order. In Judge Walls' November 4, 2004 Order Granting Relief for Defendant Jennifer Fine Foods' Violation of Preliminary Injunction, Judge Walls found

> Jennifer has manufactured and sold tomato paste bearing La Cena's registered trademark VICTORINA® and incorporating on its label La Cena's unique trade dress; and the Court's finding being based on the various exhibits P1 and P3, and in particular P3, which is a can of tomato paste bearing La Cena's registered trademark VICTORINA® and incorporating on its label La Cena's unique trade dress, and which the Court found by clear and convincing evidence to have been manufactured by Jennifer on July 23, 2002; and the Court finding that such conduct is in violation of the Court's May 30, 2002 Preliminary Injunction against Jennifer; and in particular the Court finding Jennifer in contempt for manufacturing and labeling of Exhibit P3 by Jennifer, which exhibit bears the designation "GE" identifying Jennifer as the manufacturer, and the numeral 2204 July 23, 2002, as the date of manufacture ....

(Gilfillan Decl. Ex. J).

Presently, La Cena moves for summary judgment against Jennifer on the issue of liability with respect to its claims in the First, Second, Third and Fourth Count of the First Amended Complaint.[3]

## LEGAL STANDARD

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256.  "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252.  Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment.  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999).  Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

---

[3]By letter to this Court dated December 6, 2005, La Cena agreed to waive damages against Jennifer and only seek injunctive relief in the event that the Court grants the instant motion for summary judgment.

Anderson, 477 U.S. at 257 (citation omitted).  If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

## DISCUSSION

La Cena alleges that Jennifer's use of the "VICTORINA" mark constitutes, as a matter of law, federal trademark infringement[4] and unfair competition[5] under the Lanham Act and common law trademark infringement, trade dress infringement and unfair competition.  "[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under ... common law ... ." J&J Snack Foods Corp. v. The Earthgrains Co., 220 F. Supp. 2d 358, 374 (D.N.J. 2002).  In order to prevail on a claim of trademark infringement, a plaintiff must prove that: "(1) the mark is valid and legally

---

[4]Section 32(1) of the Lanham Act, which addresses trademark infringement, provides that any person who shall "use in commerce ... a registered mark in connection with the ... advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake" without consent of the registrant shall be liable in a civil action.  15 U.S.C. § 1114(1)(a).

[5]Section 43(a) of the Lanham Act, which governs unfair competition claims, provides, in pertinent part:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device ... or any false designation of origin ... which-
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of [his or her] goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994); see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 331 (D.N.J. 1997). Here, Jennifer appears to challenge all three elements. Accordingly, all three are addressed below.

### 1.        Validity, Protectability and Ownership of the Mark

La Cena satisfies the first two requirements, validity, protectibility, and ownership, with respect to the "VICTORINA" mark. These elements are met when the mark was federally registered and becomes "incontestable" under the Lanham Act, 15 U.S.C. §§ 1058, 1065. Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000) ("If the mark at issue is federally registered and has become incontestible, then validity, legal protectability, and ownership are proved.") (citing Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 292 (3d Cir. 1991)). "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." Fisons, 30 F.3d at 472 n. 7; see also Commerce Bancorp, Inc. v. BankAtlantic, 285 F. Supp. 2d 475, 484 n. 5 (D.N.J. 2003) (citations omitted). A party who seeks to defend the infringement of an incontestable mark can only do so on grounds enumerated in the Lanham Act. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990).

La Cena maintains that the "VICTORINA" mark is incontestable.  As evidence of its ownership and of the mark's validity, La Cena provides the Court with U.S. Trademark Registration No. 1,944,805, which was issued to La Cena on January 2, 1996 for the "VICTORINA" mark.  (Puig Decl. ¶ 6, Ex. A).  La Cena further submits an Affidavit of Continued Use and Incontestability, which was filed between the fifth and sixth years of the mark's use, pursuant to 15 U.S.C. §§ 1058, 1065 and 1115(b).  It is settled law that the registration of an incontestable mark is conclusive evidence of "the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C. § 1115(b).  See also Park N' Fly v. Dollar Park and Fly, Inc., 469 U.S. 189, 196 (1985) ("With respect to incontestable marks ... registration is conclusive evidence of the registrant's exclusive right to use the mark ....") (emphasis in original).  This Court finds that the "VICTORINA" mark is both registered and incontestable, see 15 U.S.C. §§ 1058, 1065, as such, Jennifer can only defend its use of the "VICTORINA" mark with one of the enumerated exceptions to incontestibility set forth in section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

Jennifer appears to argue that the "VICTORINA" mark was obtained by fraud and as such, is not legally valid.  (Def.'s Br. in Opp. 8).  To be sure, even a mark that is deemed incontestible under the Lanham Act can be challenged on the grounds that the mark was obtained fraudulently.  15 U.S.C. § 1115(b)(1).  However, "[t]he party seeking cancellation bears the burden of proving the essential elements of a fraud claim by clear and convincing evidence." Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1353 (E.D.N.Y. 1994) (citing Gear, Inc. v. L.A. Gear California, Inc., 679 F. Supp. 508, 513 (S.D.N.Y. 1987)). Fraud on the United States Patent and Trademark Office ("PTO") requires "a willful withholding

from the [PTO] by an applicant or registrant of material information or facts which, if disclosed

to the [PTO], would have resulted in the disallowance of the registration sought or to be

maintained." Smith Int'l., Inc. v. Olin Corp., 209 U.S.P.Q. 1033, 1043 (T.T.A.B. 1981)

(citations omitted). "[T]he obligation which the Lanham Act imposes on an applicant is that he

will not make knowingly inaccurate or knowingly misleading statements in the verified

declaration forming a part of the application for registration." Bart Schwartz Int'l Textiles, Ltd.

v. Federal Trade Commission, 289 F.2d 665, 669 (C.C.P.A. 1961) (emphasis in original).   The

party seeking to establish fraud, however, faces a "heavy burden." Halo Mgmt., LLC v.

Interland, Inc., 308 F. Supp. 2d 1019, 1031 (N.D. Cal. 2003).  There is no "room for speculation,

inference or surmise," and the court must resolve any doubt "against the charging party." Smith

Int'l, 209 U.S.P.Q. at 1044; see also Yocum v. Covington, 216 U.S.P.Q. 210, 216 (T.T.A.B.

1982); Woodstock's Enter., Inc. v. Woodstock's Enter., Inc., 43 U.S.P.Q.2d 1440 (T.T.A.B.

1997)  ("Fraud in a trademark cancellation is something that must be 'proved to the hilt' ....").

Fraud "will not lie if it can be proven that the statement, though false, was made with a

reasonable and honest belief that it was true." Smith Int'l, 209 U.S.P.Q. at 1044.

Generally, a finding of fraud requires: (1) that a false representation of material fact

existed; (2) that the party had knowledge and belief that the representation is false; (3) an

intention to induce the listener to act or refrain from acting in reliance upon the

misrepresentation; (4) reasonable reliance upon the misrepresentation; and (5) damage

proximately resulting from such reliance. Guardian Life Ins. Co. of Am. v. Am. Guardian Life

Assur. Co., 943 F. Supp. 509, 529 (E.D. Pa. 1996) (citations omitted).  Furthermore, Fed. R. Civ.

P. 9(b) imposes a heightened pleading requirement of factual particularity with respect to

allegations of fraud.  Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

Here, Jennifer charges that the "VICTORINA" mark "is invalid due to a false declaration claiming that [La Cena] is the sole owner, use, [sic] etc. of the mark."  (Def.'s Br. in Opp. 8). Jennifer predicates its claim of fraud on the alleged prior use of the mark by Barcelo Industries ("Barcelo"), a company located in the Dominican Republic.  According to former Barcelo employee, Victor Santana ("Santana"), Barcelo began selling tomato paste under the "VICTORINA" mark over fifty years ago.  (Heiner Decl. Ex. A, Santana Dep. 37:1-38:7, Apr. 5, 2005).  He also testifies that Barcelo sold "VICTORINA"  brand tomato paste into the United States, but stopped doing so around 1986.  (Santana Dep. 37:1-38:7).  Further, Santana notes that since the 1970s, La Cena purchased pigeon peas from Barcelo, and that La Cena representatives visited the Barcelo plant in the Dominican Republic for "many years."  (Santana Dep. 37:12-38:14).

This Court is alert to its obligation to resolve doubts against the challenging party, just as the Court is cognizant of the applicable clear and convincing standard.  However, Jennifer offers no evidence whatever showing that La Cena knowingly made factually false statements to the PTO, and accordingly, fails to prove fraud by clear and convincing evidence.  Jennifer relies on vague, conclusory statements attacking the "VICTORINA" mark's validity, and fails to establish how the elements of the fraud exception are met.  Jennifer makes a blind assertion that a false representation was made by La Cena in its application for the "VICTORINA" mark, but provides no supporting evidence with respect to who made the alleged false representation or when it occurred.  Jennifer also fails to establish, clear and convincingly, any of the remaining elements necessary to establish fraud.  In view of the foregoing, the Court finds that Jennifer has

failed to meet its burden of presenting clear and convincing evidence of La Cena's willful intent to deceive the PTO.  Smith Int'l, 209 U.S.P.Q. at 1043-44.

## 2.  Likelihood of Confusion

La Cena must still demonstrate that Jennifer's use of the "VICTORINA" mark is likely to create confusion.[6]  The likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark."  Dranoff-Perlstein Assoc. v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992) (internal quotations omitted).  "Proof of actual confusion is not necessary; likelihood is all that need be shown."  Opticians, 920 F.2d at 195.  It is settled that likelihood of confusion "should be determined by viewing the two marks from the perspective of an ordinary consumer of the goods or services."  Dominion Bankshares Corp. v. Devon Holding Co., 690 F. Supp. 338, 345 (E.D. Pa. 1988).  If the owner of the mark and the infringer are competitors, the court will rarely look beyond the mark itself; the court will examine the registered mark and compare it against the challenged mark.  Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983).  In Lapp, the Third Circuit enumerated ten factors to be considered in evaluating the likelihood of confusion by consumers:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the

---

[6]Jennifer does not deny that a likelihood of confusion exists; rather, Jennifer contends that likelihood of confusion is irrelevant.  (Def.'s Br. in Opp. 8).  However, this position is clearly contravened by well-established precedent.

same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

Lapp, 721 F.2d at 462 (citations omitted). No one factor is decisive, and each factor should be weighed and balanced one against the other. Fisons, 30 F.3d at 473 ("The weight given to each factor in the overall picture, as well as the weighing for plaintiff or defendant, must be done on an individual fact-specific basis."); see also Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 280 (3d Cir. 2001). Furthermore, "a district court should utilize the factors that seem appropriate to a given situation." A & H, 237 F.3d at 215.

In support of its motion, La Cena includes, as exhibits to the instant motion, six cans of tomato paste containing the "VICTORINA" mark and trade dress. (Gilfillan Decl. Exs. I, P, Q, S, U, and V). La Cena maintains that these cans are counterfeit and that they were manufactured by Jennifer. These exhibits all contain a "GE" manufacturing code, followed by a four-digit code. These cans, which were not authorized by La Cena, are labeled "Packed for: DOMINICANA Distributors, Scarborough, Ont., CANADA M1N1W9." (Id.). Notably, one of the exhibits is a can of "VICTORINA" brand tomato paste purchased at the C-Town Supermarket on August 23, 2003. The can bears the "GE" manufacturing code, followed by the numeral "2204." (Gilfillan Decl. Ex. I). As already noted, by Order dated November 4, 2004, Judge Walls held Jennifer in contempt for manufacturing and labeling a can of tomato paste containing the same designation, namely, the "GE" code, followed by the number "2204."

The Court also observes that two of these cans were purchased at the Super-Super Market of Paterson – one on June 13, 2002, the other on August 23, 2002. (Gilfillan Decl. Exs. P,Q). A

third can was purchased at the Super-Super Market of Union City on October 15, 2002. (Id. Ex. S).  Significantly, Antonio Perez ("Perez"), the owner of both supermarkets, does not recollect dealing with a company named Dominicana with respect to the purchase of "VICTORINA" tomato paste.  (Gilfillan Decl. Ex. R, Perez Dep. 122:15-123:1, May 7, 2004).  Perez does testify, however, that he would purchase tomato paste marked "VICTORINA" directly from "the packer" by phone.  (Dep. 126:21-127:2).  He would then send someone to pick up the order. (Dep. 127:2-5).  While Perez does not reference Jennifer by name, he testifies that he made purchases only from the "Paterson packing plant."  (Dep. 127:21-24).  The record reflects that Jennifer, and its successor-in-interest, Pomodoro, both have a principal place of business at 46 Lewis Street, in Paterson, New Jersey.  (Am. Compl. ¶¶ 1-2).  Moreover, Perez has previously stated that he was approached by Ziv in late 1999 for purposes of purchasing "VICTORINA" brand tomato paste for his stores.  (Cert. of Tony Perez in Opp. to Pl.'s Mtn. to Find Super-Supermarket in Contempt ("Perez Cert."), ¶ 11).  Perez accepted Ziv's offer to purchase "VICTORINA" brand tomato paste from Jennifer.  (Perez Cert. ¶ 12).  Perez apparently purchased the tomato paste from Jennifer until he was served with motion papers in November of 2002 in connection with La Cena's motion for contempt before Judge Walls.  (Perez Cert. ¶ 20).  In view of the foregoing, a reasonable trier of fact would conclude that the non-authorized cans were manufactured by Jennifer.  Jennifer's conclusory assertions to the contrary in its responsive brief and its counsel's declaration, fail to raise a material issue of fact.  As the party opposing summary judgement, Jennifer must set forth specific facts, by way of affidavits, depositions, admissions or answers to interrogatories, which demonstrate the existence of a triable issue of fact.  O'Donnell v. United States, 891 F.2d 1079, 1082 (3d Cir. 1989) ("If the moving party has met its burden of proof, the opposing party may not rest on 'the mere

allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)); see also Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations in his memorandum and pleadings are insufficient to repel summary judgment."). Jennifer has failed in this regard. Therefore, the Court now turns to whether there is a likelihood of confusion between the La Cena and Jennifer products.

Here, a side by side comparison of the La Cena tomato paste can, see Gilfillan Decl. Ex. F, and cans manufactured by Jennifer, see Gilfillan Decl. Exs. I, P, Q, S, U, V, makes it almost impossible to distinguish the two. "The single most important factor in determining likelihood of confusion is mark similarity." A & H, 237 F.3d at 216. Indeed, the Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. Opticians, 920 F.2d at 195 (citing U. S. Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 142  (3d Cir. 1981)).[7] Therefore, the first Lapp factor easily weighs in favor of La Cena, as it is incontrovertible that Jennifer's "VICTORINA" mark and trade dress are virtually identical to La Cena's mark and trade dress. The second Lapp factor also favors La Cena. There is ample support for the strength of La Cena's "VICTORINA" mark because it has been in continuous use since at least 1987.[8] The fourth Lapp factor also weighs in La Cena's favor, as Jennifer offers no record evidence that it has used the mark for any period of time without causing actual confusion. Turning to the fifth factor, the identical nature of the cans manufactured by Jennifer strongly supports a finding of Jennifer's intent to adopt the "VICTORINA" mark. Moving on to

---

[7]The Third Circuit has further recognized that when, as here, products directly compete, mark similarity "may be the most important of the ten factors ...." Fisons, 30 F.3d at 476

[8]The Court takes no position on the third Lapp factor, as neither party has failed identify factors indicative of the care and attention expected of consumers with respect to the "VICTORINA" brand.

the sixth <u>Lapp</u> factor, namely, evidence of actual confusion, one only need compare the La Cena

tomato paste cans to the cans manufactured by Jennifer, to conclude that it is virtually

impossible to differentiate them.  (Gilfillan Decl. Exs. F, I, P, Q, S, U and V).  There is also no

question that the seventh and eighth factors favor La Cena, as the goods are marketed to the

same channels and parties.  Finally, La Cena's and Jennifer's cans of tomato paste bearing the

"VICTORINA" mark are virtually identical, and thus, are likely to lead persons exposed to

Jennifer's product to believe that the goods are affiliated with La Cena.

In sum, there is ample proof that Jennifer's use of the "VICTORINA" mark gives rise to

a likelihood of confusion.  Thus, La Cena establishes the final requirement of its trademark

infringement, trade dress infringement and unfair competition claims.  Accordingly, La Cena is

entitled to summary judgment on Counts One through Four of its Amended Complaint.  As La

Cena has agreed to waive its damages claim against Jennifer if successful as to liability, the

Court now turns to the remaining issue of injunctive relief.

**B.      Permanent Injunction**

The standard for granting a permanent injunction "is essentially the same as for a

preliminary injunction with the exception that the movant must demonstrate actual success on

the merits rather than showing a likelihood of success on the merits."  <u>Church & Dwight Co.,</u>

<u>Inc. v. S.C. Johnson & Son, Inc.</u>, 873 F. Supp. 893, 903 (D.N.J. 1994) (citations omitted); <u>see</u>

<u>also</u> <u>Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.</u>, 747 F.2d 844, 849 (3d Cir.1984), <u>cert.</u> <u>denied</u>,

471 U.S. 1137 (1985).  Thus, in determining whether to grant a permanent injunction, a court

must consider: "(1) the moving party's success on the merits; (2) the probability of irreparable

injury to the moving party in the absence of relief; (3) the potential harm to the non-moving

party; and, if applicable, (4) the public interest."  <u>Id.</u> (citing <u>Fechter v. HMW Indus., Inc.</u>, 879

F.2d 1111, 1116 (3d Cir. 1989)); see also United States v. Price, 688 F.2d 204, 211 (3d Cir. 1982).

        In the present matter, La Cena has proven actual success on the merits on its claims of federal trademark infringement and unfair competition under the Lanham Act and its common law claims of trademark infringement, trade dress infringement and unfair competition. La Cena also establishes irreparable harm. In the Third Circuit, a showing of a likelihood of confusion establishes irreparable harm. Opticians, 920 F.2d at 196 (citing cases). This Court has already found that Jennifer's use of "VICTORINA" creates a likelihood of confusion, and accordingly, the irreparable harm requirement is satisfied. This Court also finds that a balance of the hardships favors La Cena, as it has invested significant sums of money to promote and market the "VICTORINA" mark. The final requirement necessary for an injunction, namely, the public interest, also weighs in favor of issuance of injunctive relief because "there is a public interest in the protection of the trademark and to avoid confusion in the public." Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 156 (3d Cir. 1984). See also W.L. Gore & Assoc., Inc. v. Totes Inc., 788 F. Supp. 800, 813 (D. Del. 1992) ("The public has a right not to be deceived or confused.") (citations omitted). Clearly, Jennifer's non-authorized use of the "VICTORINA" mark and trade dress confuse the consuming public. Therefore, there is ample public interest to permanently enjoin Jennifer from continuing to use the mark.

        Based on the foregoing, La Cena satisfies all the requirements necessary for the issuance of a permanent injunction.

**CONCLUSION**

For the reasons set forth above, Plaintiff La Cena Fine Foods, Ltd.'s motion for summary judgment [Docket # 68] is GRANTED as against Defendant Jennifer Fine Foods.   The Court also grants Plaintiff La Cena Fine Foods, Ltd.'s request for a permanent injunction against Defendant Jennifer Fine Foods.

An appropriate order follows.


DATED: July 17, 2006                                    s/ Jose L. Linares
                                                        United States District Judge